UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDDIE ROBLES,

          Petitioner,

   -vs-

MARK L. BRANDT,

          Respondent.

**DECISION AND ORDER**

**No. 08-CV-6115T**

_____

## I.   **Introduction**

*Pro se* petitioner Eddie Robles ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 1, 2005, in New York State, Supreme Court, Wayne County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[3]), Attempted Robbery in the First Degree (Penal Law §§ 110, 160.15[1]), and Assault in the Third Degree (Penal Law § 120.00[1]).

For the reasons stated below, the writ is denied and the petition is dismissed.

## II.  **Factual Background and Procedural History**

### A.   **Introduction**

On June 24, 2004, Petitioner, who was twenty-five years old, his brother, Freddie Rivera ("Rivera"), and a group of five teenagers were walking by the Red Apple Kwik Fill gas station in

Lyons, New York.  Two of the teenagers, Xavier Chance ("Chance")
and Trisha O'Sullivan ("O'Sullivan"), approached Carl Nortier
("Nortier" or "the victim"), a fifty-one-year-old man, and asked
him for fifty cents.  Nortier made a racially derogatory sexual
remark to Chance.  The five teenagers then overheard Petitioner
state that he was going to "run [Nortier's] pockets."  Petitioner
approached Nortier from behind and punched him with a closed fist
on the side of his face.  Nortier fell straight back and cracked
his skull on the pavement.  Petitioner instructed the teenagers to
"run [Nortier]," although no one touched him.  When two of the
teenagers went to call the police, Petitioner and his brother fled
the scene.  Nortier was airlifted to Newark-Wayne Community
Hospital, where he later died from brain injuries sustained as a
result of the fracture to his skull.

**B.    Indictment & Pre-Trial**

Petitioner was indicted by a Wayne County Grand Jury and
charged with Murder in the Second Degree, Attempted Robbery in the
First Degree, Assault in the First Degree, Criminally Negligent
Homicide, and Assault in the Third Degree.  Prior to trial, the
court dismissed the Criminally Negligent Homicide charge based on
insufficiency of the evidence before the Grand Jury.  Trial
Transcript [T.T.] 9, 26-27.

Before the trial commenced, a <u>Sandoval</u>[1] hearing was held, wherein the trial court determined that, if Petitioner were to testify, the People would be permitted to cross-examine him concerning his prior convictions for petit larceny, criminal possession of stolen property, offering a false instrument for filing, and burglary.  T.T. 21-24.

### C.   Trial

### 1.   The People's Case

On June 24, 2004, at approximately 10:00 p.m., sisters Latasha and Iesha Streeter were outside of the Red Apple Kwik Fill gas station in Lyons, New York when Petitioner, Rivera, Phillip Godbold ("Godbold"), Chance, and O'Sullivan approached them.  Petitioner asked the Streeter sisters for fifty cents to buy a "blunt."  The sisters told Petitioner they did not have fifty cents.  T.T. 211-216.

The record reveals that Nortier approached the group of individuals when the event occurred.  He was coming from a bar and appeared to be intoxicated.  Nortier began to dance in the street with one of the Streeter sisters.  Chance and O'Sullivan approached Nortier and asked him for fifty cents.  T.T. 217, 265, 269, 291, 293, 300, 340, 391.  Nortier did not give them the money, and proceeded to ask Chance if he could perform oral sex on him.  T.T. 393.  Chance told O'Sullivan what Nortier had said and O'Sullivan

---

[1]   <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974) (admissibility of prior convictions of proof of prior commission of specific criminal, vicious or immoral acts to impeach defendant's credibility).

told Nortier that he should leave. T.T. 393. Chance walked away. T.T. 397-398.

The Streeter sisters overheard Petitioner say that he was "going to get [Nortier]" and that he was going to "run [Nortier's] pockets." T.T. 217, 219, 386. Petitioner then approached Nortier and punched him on the side of his face. Nortier fell straight back and hit his head on the cement. Nortier did not move and blood was coming out of his head and ears. Godbold, O'Sullivan, and the Streeter sisters all heard Petitioner say, "run his pockets" or "run 'em," indicating that the teenagers should steal Nortier's belongings. T.T. 218-219, 279-280, 297, 319-320, 341. One of the Streeter sisters screamed and stated that she was going to call the police. In response, Petitioner told her "no, you are not." T.T. 220, 281-282, 320. The Streeter sisters ran to a police station to report the crime. Petitioner and his brother ran away. No one touched Nortier or went into his pockets. T.T. 222-223, 269-270, 298, 320.

Police Officer Kevin Costello ("Officer Costello") was at the police station, and was alerted to the attack by the Streeter sisters. At the scene, Officer Costello observed Nortier unconscious on the ground with blood coming from his head, and immediately called an ambulance. Officer Costello took statements from the Streeter sisters, O'Sullivan, and Chance. Petitioner was arrested later that night. T.T. 419-424.

Christine Mierke, the paramedic who responded to the scene of the crime, determined that Nortier had suffered serious head

-4-

trauma. She arranged for Nortier to be airlifted to the trauma center at Newark-Wayne Community Hospital. T.T. 426-429.

Thomas Duval Smith ("Smith"), the Chief Medical Examiner for Monroe County, testified that Nortier died on June 21, 2001, at approximately midnight. Smith examined Nortier's body and determined that he ultimately died from blunt trauma to the head when he hit the pavement. T.T. 381-384.

### 2. The Defense's Case

Meaghan Belli ("Belli") testified that she encountered Petitioner at approximately 10:15 p.m. on the night of the crime and that he seemed upset.[2] T.T. 438-439.

### 3. Verdict and Sentence

Petitioner was found guilty of Assault in the Third Degree, Murder in the Second Degree, Assault in the First Degree,[3] and Attempted Robbery in the First Degree. T.T. 603, 611. On February 1, 2005, Petitioner was sentenced to an indeterminate term of twenty years to life imprisonment on the murder count, a determinate term of twelve years on the robbery count, and one year on the assault count. All of the sentences were ordered to run concurrently. The court also ordered that Petitioner serve five years post-release supervision. S.M. 15-17.

---

[2] The trial court ruled that Belli's testimony as to what Petitioner told her about the incident and why he had hit Nortier, was partially a declaration against penal interest and partially hearsay without an exception. The trial court limited the statement to the fact that Petitioner had told Belli that he had hit a man. Once the court made this ruling, defense counsel did not question Belli further. T.T. 440-443.

[3] At sentencing, the trial court ruled that the Assault in the First Degree count merged with the murder count. Sentencing Minutes [S.M.] 17.

**D. Direct Appeal**

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on March 16, 2007. People v. Robles, 38 A.D.3d 1294 (4th Dept. 2007); lv. denied, 8 N.Y.3d 990 (2007).

**E. The Habeas Corpus Petition**

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the trial court abused its discretion with respect to its Sandoval ruling; (2) the verdict was against the weight of the evidence; (3) the trial court erroneously prevented a defense witness from testifying to a complete statement made by Petitioner after the incident; and (4) the trial court made erroneous rulings with respect to hearsay testimony. Petition [Pet.] ¶ 22A-D (Dkt. #1); Reply Br. of Pet'r [Reply Br.] (Dkt. #16).

**III. General Principles Applicable to Habeas Review**

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.  Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995)." The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), <u>cert. denied</u>,

464 U.S. 1048 (1984).  However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'"  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted).  Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)."  Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence).  See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277-78 (1992).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'"  Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that

resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

## IV. Petitioner's Claims

### 1. Trial Court's Sandoval Ruling was an Abuse of Discretion

In ground two of the petition, Petitioner argues that the trial court abused its discretion when it ruled, at a pre-trial Sandoval hearing, that Petitioner, should he testify at trial, could be cross-examined concerning prior convictions for petit larceny, criminal possession of stolen property, offering a false instrument for filing, and burglary. Petitioner argues that the trial court's ruling effectively precluded him from testifying, thereby depriving him of his right to present a defense. Pet. ¶ 12B. Petitioner raised this claim on direct appeal, and it was rejected on state procedural grounds for failure to properly preserve it for appellate review. Robles, 38 A.D.3d at 1295. Consequently, as discussed below, the claim is procedurally barred from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at N.Y. Crim. Pro.

Law ("C.P.L.") § 470.05(2)) to deny Petitioner's claims because the issues had not been properly preserved for appellate review. The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). The Appellate Division's reliance on C.P.L. § 470.05(2) is an adequate and independent state ground, which precludes this Court's review of Petitioner's claim.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). "Cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488). To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Petitioner has not alleged cause and prejudice, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, the claim is barred from review by this Court.

In any event, even if Petitioner were able to overcome the procedural default, his claim is not cognizable on habeas review.

"It is well settled that a [habeas] petitioner's failure to testify [at trial] is fatal to any claims of constitutional deprivation arising out of a Sandoval type ruling because, in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of the claim." Peterson v. LeFevre, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), aff'd mem., 940 F.2d 649 (2d Cir. 1991); see Luce v. United States, 469 U.S. 38, 43 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

This means that habeas relief is not warranted if the petitioner decided not to testify, regardless of the fact that the trial court's Sandoval ruling may have motivated petitioner's decision. See McKenzie v. Poole, 03-CV-4253, 2004 U.S. Dist. LEXIS 23598, at *15 (E.D.N.Y. Nov. 23, 2004); see also Goston v. Rivera, 462 F.Supp.2d 383, 390 (W.D.N.Y Nov. 26, 2006) (finding that Petitioner's Sandoval claim did not raise constitutional issue cognizable on habeas review where Petitioner did not testify at trial); Oslan v. Parrott, 01 Civ. 6551, 2004 U.S. Dist. LEXIS 11681, at *6-*7 (S.D.N.Y. June 22, 2004) ("Petitioner chose not to testify at trial. Therefore, petitioner's claim based on the trial court's Sandoval ruling does not raise a constitutional issue cognizable on habeas corpus review."); Delgado v. Duncan, 02 Civ.

4929, 2003 U.S. Dist. LEXIS 24123, at *12 (E.D.N.Y. Nov. 13, 2003) ("Because petitioner did not testify at trial, this claim [regarding the Sandoval ruling] is not cognizable on habeas review."). Here, Petitioner elected not to testify at trial and, thus, his Sandoval claim cannot provide a basis for habeas relief.

Accordingly, Petitioner's claim that the trial court's Sandoval ruling was an abuse of discretion is denied.

### 2. Verdict was Against the Weight of the Evidence

In ground four of the petition, Petitioner argues that the verdict was against the weight of the evidence. Pet. ¶ 22D. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Robles, 38 A.D.3d at 1294-1295. As discussed below, this claim does not present an issue that is cognizable by this Court on habeas review.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is

based on federal due process principles.  People v. Bleakley, 69 N.Y.2d 490, 495 (1987).  Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review.  See U.S.C. § 2254(a);  Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, this claim is denied.

### 3.    Erroneous Evidentiary Ruling - Preclusion of Complete Statement

In ground three of the petition, Petitioner argues that the trial court erred when it prevented defense witness Belli from testifying to a complete statement made by Petitioner after the crime.  Pet. ¶ 22C; Reply Br. 28-30.  Petitioner raised this claim on direct appeal but failed to do so in federal constitutional terms, thereby rendering the claim unexhausted for federal habeas purposes.  Nonetheless, because Petitioner no longer has a state court forum available to him to exhaust the claim, the Court deems the claim exhausted, but procedurally defaulted.

A petitioner for habeas corpus is limited by 28 U.S.C. § 2254 to raising claims implicating the Constitution or laws or treaties of the United States.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. at 68.  Here, Petitioner did not frame this claim in federal, constitutional terms but rather relied

on state law to support his arguments on direct appeal. He has therefore failed to properly exhaust his claim that the trial court erred when it prevented a defense witness from testifying to a complete statement made by Petitioner after the crime.

To satisfy the exhaustion requirement, a habeas petitioner must have afforded the state courts a fair opportunity to consider his federal claim. <u>Picard v. Connor</u>, 404 U.S. 270 (1971). In other words, he must present essentially the same factual allegations and legal doctrines to the state court and federal court. <u>Daye</u>, 696 F.2d at 191. The manner in which a state defendant may fairly present the constitutional nature of his claim includes reliance on pertinent federal cases employing constitutional analysis, reliance on state cases employing constitutional analysis in like fact situations, assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and an allegation of a pattern of facts that is well within the mainstream of constitutional litigation. <u>Id.</u> at 194.

Although Petitioner has raised the same factual allegations here as he did on appeal, he did not apprise the state appellate courts of the federal constitutional nature of his claim. Rather, the argument advanced by Petitioner was neither phrased in constitutional terms, nor within the mainstream of constitutional litigation. <u>See</u> <u>Daye</u>, 696 F.2d at 193. Petitioner filed one direct appeal to the Appellate Division and was denied leave to

appeal to the New York Court of Appeals. He may not file another direct appeal. <u>See</u> N.Y. Court R. § 500.20; <u>see also</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 91 (2d Cir. 2001). Although Petitioner may still seek collateral review in state court, he may not seek collateral review of any claims he could have raised on direct appeal, but unjustifiably did not. <u>See</u> C.P.L. § 440.10(2)(c) (the court must deny a motion to vacate a judgment when sufficient facts appear on the record to have permitted adequate review of the issue on direct appeal); <u>see also</u> <u>Aparicio</u>, 269 F.3d. at 91 (citing C.P.L. § 440.10(2)(c)).

Because Petitioner no longer has a forum available in state court in which to raise his unexhausted claim, the Court deems the claim exhausted but procedurally barred. Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural default, nor has he demonstrated that this Court's failure to consider the claim would result in a miscarriage of justice. <u>See</u> <u>Wainwright</u>, 433 U.S. at 87-91. Accordingly, Petitioner's claim is denied.

### 4. Erroneous Evidentiary Rulings - Preclusion of Hearsay Testimony

In ground one of the petition, Petitioner contends that the trial court made erroneous evidentiary rulings with respect to precluding the admission of hearsay testimony by various prosecution witnesses. Pet. ¶ 22A; Reply Br. 13-27. Petitioner argues that these erroneous rulings deprived him of his due

process right to a fair trial. Petitioner properly raised this claim on direct appeal in federal constitutional terms, and it was rejected on the merits. The Appellate Division determined that the trial court properly excluded the testimony as hearsay, without an exception.[4] Robles, 38 A.D.3d at 1295.

As a general matter, challenges to state court evidentiary rulings are a matter of state law and are not cognizable on habeas review. See Estelle, 502 U.S. at 67-68. Moreover, trial judges have considerable discretion in making evidentiary determinations, and absent a serious abuse of that discretion, deference to the trial judge's decision is due. See Jacobson v. Henderson, 765 F.2d 12, 15-16 (2d Cir. 1985) (upholding on habeas review trial judge's ruling excluding evidence on grounds that it was collateral and extrinsic). Thus, to prevail on a claim that an evidentiary error deprived him of due process, a habeas petitioner must show that the error was so serious as to deny him his right to a fair trial. See Chambers v. Mississippi, 410 U.S. 284 (1973); Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985). Where evidence is erroneously excluded, the test for determining whether the ruling denied the

---

[4]     The Appellate Division held as follows: "We reject defendant's further contention that County Court abused its discretion in refusing to permit several witnesses to testify that they heard another witness repeat a remark allegedly made by the victim to that witness. The defense theory at trial was that defendant struck the victim because the victim made an offensive remark to one of defendant's companions when the companion asked the victim for money, not because defendant intended to rob the victim. Contrary to defendant's contention, the testimony was hearsay inasmuch as it was offered for the truth of the facts asserted in the statement of defendant's companion, i.e., that the victim made the offensive remark, and the testimony does not fall within an exception to the hearsay rule." Robles, 38 A.D.3d at 1295 (internal citations omitted).

defendant a fair trial is whether the excluded evidence would have created "'a reasonable doubt that did not otherwise exist.'" Collins, 755 F.2d at 18 (citing United States v. Agurs, 427 U.S. 97, 112 (1976). See also Chambers, 410 U.S. at 302-03.

Here, Petitioner contends that various prosecution witnesses should have been permitted to testify to the statement the victim made to Chance prior to Petitioner punching him because it tended to show that Petitioner's actions were motivated by the "derogatory racial and homosexual comments of the deceased," not, as the prosecution proffered, an intent to rob the victim. Pet. ¶ 22A, 8B. The Court rejects this contention, and finds that the trial court did not abuse its discretion in precluding the testimony as hearsay, without an exception. See Robles, 38 A.D.3d at 1295.

Under New York law, hearsay is defined as "a statement made out of court . . . offered for the truth of the fact asserted in the statement." People v. Goldstein, 6 N.Y.3d 119, 127 (2005) (internal citations omitted). An apparent exception to the hearsay rule exists where the statement is not offered for the truth of the matter but rather to indicate the state of mind of the hearer. See Richardson, Evidence § 8-106 (Prince 11th ed.) (explaining that the utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind of the hearer); see also People v. Harris, 209 N.Y. 70 (1913).

In this case, the record reflects that during the cross-examination of each of the Streeter sisters and O'Sullivan defense counsel attempted to elicit testimony as to what the victim had said to Chance prior to Petitioner punching the victim. T.T. 227, 300-301, 355-356. Defense counsel asked Latasha Streeter, "what did you hear Xavier Chance say about [the victim]?" The People objected on hearsay grounds and a bench conference was held. T.T. 227. At the bench conference, defense counsel explained that she wanted to elicit from Latasha Streeter that she had overheard Chance yell that Nortier had inquired as to whether he could perform oral sex on Chance. The prosecutor argued that it was hearsay for Latasha Streeter to repeat what she had heard someone else say. T.T. 228. Defense argued that it was not hearsay because Latasha Streeter had witnessed the incident, and that it was not offered to prove the truth of the matter asserted but rather that the statement was made and heard by Petitioner. T.T. 228-230. After a recess, the trial court asked defense counsel if her argument was that the statement went to her client's state of mind at the time of the incident. T.T. 234. Defense counsel stated that this was not her argument, and that she was trying to demonstrate that there was an alternate reason for why Petitioner punched Nortier. T.T. 234. The court then sustained the objection. T.T. 236. The same objection was sustained with

respect to the testimony of the other Streeter sister and O'Sullivan. T.T. 300-301, 355-356.

Based on these circumstances, it appears that the statements that defense counsel tried to elicit from prosecution witnesses regarding what the victim had said to Chance may have been admissible to show Petitioner's state of mind (i.e., that his passions were inflamed by the derogatory comment), assuming, of course, Petitioner overheard the statement. However, defense counsel explicitly stated, on the record, that she was not eliciting this testimony to prove Petitioner's state of mind. And, although she argued that the statement was not being offered for the truth of the matter asserted, she was unable to articulate any valid exception to the hearsay rule when questioned by the judge. T.T. 234-237. Therefore, as the Appellate Division held, the trial court's ruling, sustaining the objection, was not an abuse of its discretion.

Furthermore, the Court cannot find that the excluded evidence could have created in the jurors' minds a "reasonable doubt that did not otherwise exist," Collins, 755 F.2d at 18, as to Petitioner's guilt. This is because Chance was permitted to testify to Nortier's statement on cross-examination. T.T. 393. To that extent, there is no possibility -- contrary to Petitioner's contention -- that the preclusion of the hearsay testimony of the Streeter sisters and O'Sullivan on cross-examination could have

influenced the jury's verdict.  The derogatory comment made by the victim was presented to the jury for its consideration through Chance's testimony, and, in doing so, defense counsel was able to offer an alternate theory on summation as to why Petitioner punched the victim.  T.T. 479-483.

Accordingly, the Court finds that the trial court committed no constitutional error in excluding the hearsay evidence that the defense wished to introduce at Petitioner's trial.  Petitioner's claim presents no grounds for habeas relief, and the claim is denied.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York,

within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

        **IT IS SO ORDERED.**

                                    S/Michael A. Telesca

                         _____
                         HONORABLE MICHAEL A. TELESCA
                         United States District Judge

DATED:     July 23, 2010
            Rochester, New York